Nice to see all of you. We're here for the first case, which is Center for Food Safety v. Vilsack and Mr. Achatoff. I know many of you are here for the second case as well. We will take a brief recess. We may start earlier than the scheduled 4 o'clock time for that case. We have to reconstitute the panel and I need to call Judge Randy Smith, but that shouldn't take too long. So please stick in the courtroom. We may be back shortly. Please proceed. Thank you. Good afternoon. I'm Paul Achatoff. I represent the appellants, plaintiffs below. My clients were wrongly denied their fundamental right to protect themselves and the public interest in court from conduct the lower court found flagrantly illegal. The government and industry transparently colluded to violate the law and circumvent a lower court ruling that plaintiffs obtained after three years of hard-fought litigation, vacating the agency's genetically engineered sugar beets deregulation, making it unlawful to plant the crop without prior NEPA review. They did so in a way specifically designed to allow continued production of the crop without prior NEPA review while preventing plaintiffs from holding them accountable in court. They did this by issuing commercial seed production permits set to expire in only five months with no prior NEPA analysis, arbitrarily severing this five-month phase from the rest of the sugar beet production cycle, knowing and intending the permits would expire before anyone could get a final judgment. The court below found that this was a classic case of NEPA segmentation, chopping up an agency action into pieces to avoid prior NEPA review. The court held the legality of defendants' conduct does not even appear to be a close question. As defendants intended from the outset, as soon as the permits expired and before the plaintiffs could possibly get a final judgment, the defendants argued that plaintiffs' challenge to the unlawfully issued planting permits was moot. The court erroneously agreed. The court erred by completely failing to address the cornerstone of mootness, whether it could still order any effective relief. Instead, it wrongly concluded that the permits' expirations compelled a mootness finding. But what precisely is the relief that you would want? The relief that was available then is much of it is still available now, and that would relief would include anything from investigating the harms from the sugar beet crop cycle, an order destroying some aspect of the crop, precluding any later seed planting, imposing safeguards to protect my client's interests from the various harms that have been shown to occur from this crop, to mitigate any harms from the entire crop cycle that may have occurred to my clients. And all this Court has to find is that any of this or any other form of effective relief exists for this case not to be moot. Now, the lower court overlooked this entirely and simply assumed, as the government argued, that once the permits had expired, even though the court had already found that those permits would have been unlawfully segmented from the rest of the crop cycle, the challenge to the permits was moot. This Court, yes. Sotomayor, can I just follow up for a moment? You referred earlier in your argument to the repeated conduct of the government in segmenting their conduct so that it would evade review. This was a motion to dismiss. Where in the record is there any support for that, for the assertion that this is repeat conduct by the government aimed at frustrating judicial review? The --" Let me say first that it is not the plaintiff's burden to prove that conduct will be repeated. It is the defendant's burden and, in fact, a very heavy burden this Court has repeatedly found to establish that its conduct is not capable of repetition. So holding plaintiffs to a showing that this conduct will be repeated is the wrong legal standard, and, in fact, this was one of the errors of the lower court. Well, I was just asking about the legal issue of burden. I was just asking if there was anything in this record that would show one way or another. My clients have moved to supplement the record on appeal with a lot of evidence, most of which was newly discovered after this appeal was filed, showing that this is that issuance of permits prior to NEPA review, prior to crop deregulation to produce seed in anticipation of deregulation is a routine practice that the agency engages in. So the answer to the question of is there anything in this record that would substantiate that, the answer is no. I would have to agree, Your Honor. I wanted to ask you about the scope of your equitable relief. Obviously, with the permit expired, there's no relief there. And we do have cases where there are collateral effects so that even though one aspect of the case is moot, there may be collateral effects that could be subject to remedy. My question here is, are these forward-looking relief that you've asked for, and was this specifically asked for in the district court? Because it almost seems like having, recognizing the difficulty with the permit expiration, that you're fishing in a way to keep a case alive that might be a different case where it refiled. Well, first, the availability of some relief in some other case challenging some other agency action is not the test for mootness of this case. It's not the court. Well, I understand that. But is this this case is what I'm asking, the equitable relief you're asking for. Your Honor, the lower court and, in fact, this court, when the lower court's preliminary injunction was up for review and reversed, both held this court in terms of standing, the lower court in terms of its NEPA decision, that the action was properly viewed as the entire sugar beet production cycle and not merely the arbitrarily segmented permits, that this was a facade that was designed by the plaintiffs to avoid review. The lower court found that. So the question of effective relief extends to the entire sugar beet production cycle, which is, in fact, ongoing. This is not a matter that has ended. The matter is over with. There's nothing more a court can do. This is not one of those cases. This is a matter that was ongoing at the time the matter was dismissed and is ongoing today. And, in fact, whether the matter itself, the action, the authorized action is ongoing, again, is not the test for mootness. The test is whether there can be any effective relief, including remediation of harm that has occurred from this extensive production of sugar beets and sugar beet seeds over a long period of time over a wide geographic area. I'm not sure you've really answered my question, except in the abstract. So to be more specific, is it your view that with the crop cycle ongoing, that the court could step in and impose certain remedial actions with respect to that cycle? Well, I believe that is one form of effective relief, that the court does have the power to order. Certainly, it has the equitable power to impose equitable relief that would either mitigate harm that my clients are exposed to or address harm that they have already been exposed to or prevent harm that they are threatened with. Yes. And, again, I want to stress that it's not dependent upon the action ongoing. Even if the action were over, the case is not moot if the court can order relief that looks at whether there has been any harm that can still be remediated. So you listed four means of redressing the injury. The first one was investigating harm. How does the district court have that power at this juncture? Well, I think the district court can, if the case is not moot, the court can make an order saying that the government should look at the extent, for example, that the genetically engineered crop to my client's crops, just as one example. There are a variety of harms that have been identified with these crops and have been identified in the government's own materials. Contamination is one. Well, I understand why you want it. I guess I'm trying to understand what case allows a court in this particular instance, once the permit has expired, to order new investigations? Well, I would cite the Neighbors of Cutty Mountain case as an example. The Northwest Environmental Defense Center v. Gordon, Cantrell v. City of Long Beach, Forest Guardians v. Johans are all Ninth Circuit cases in which the courts where cases have been held to be not moot, as long as, even after the activities have ceased, as long as the court can fashion some equitable relief to address the effects of that action. In all those cases, there was something else contemplated, some further agency action. What agency action do you contemplate here? I guess I'm not sure what the relevance of the further agency action is to those cases, but take Your Honor's word for it that that's a material aspect. But the ---- Well, it may or may not be material. I guess I viewed it as the potential of further government action in that area was at least a factor in some of those cases, if not all. I think the potential for further government action may have facilitated ordering the government to do something differently the next time. But as long as this case is not moot, I believe the lower court has the authority to address harm that has been caused by the government's action. Whether or not the government intends to take further action with respect to this particular crop. I think we have your argument in hand. Do you want to save some time for rebuttal? Yes. I would like to save the remaining time. Thank you. Good afternoon, and may it please the Court. My name is Matthew Littleton, and I represent the federal defendants. With me at counsel table is Richard Bress, representing the intervener defendants. I'll be arguing for nine minutes this afternoon, reserving six minutes for Mr. Bress. Okay. Your Honors, this APA suit is moot because this Court can no longer award plaintiffs any effective relief. APHIS has completed an environmental impact statement, the most comprehensive document envisioned by NEPA. And the agency used the results of that analysis when it decided in July of this year that the Roundup Ready sugar beet is not a plant pest that is subject to regulation at all under the Plant Protection Act. At this point, Your Honor, the plaintiffs cannot be granted any effective relief for their claims. There are two types of injuries that the plaintiffs allege in this case. One are NEPA procedural injuries, and those injuries have been remedied to the extent that they could be by the completion of the environmental impact statement for full deregulation, which necessarily encompasses the phase of the sugar beet life cycle, that issue in this case, the seedling or steckling phase. The other types of injuries that plaintiffs have alleged relate to the specific plants that were planted under the terms of these permits. And those plants, plaintiffs have never contested, have been removed from the ground at this point. They were removed in fall 2011, as this Court noted in its earlier opinion in an earlier phase of this case. So there is no further harm that could possibly be done with respect to those plants. This Court noted in my opponent's argument that what plaintiffs are really asking for and the equitable relief they're asking for relates to a different case, and that different case is a challenge to the full deregulation decision, which was issued earlier this year. And in the context of that case, the plaintiffs can raise the claim that they term a NEPA segmentation claim, but it's really a claim related to the timing of the environmental analysis. A case that plaintiffs cite in their reply brief is directly on point here, and that's the Pitt River case, in which in the context of a challenge to an EIS, the plaintiffs made the claim that the EIS was completed too late, and the agency had made an irretrievable commitment of resources at that time, and that that was a procedural injury. The plaintiffs could raise a similar claim and a challenge to the deregulation decision here, which they have not yet challenged. Kagan. May I ask, with respect to the four extant harms that the center puts forth, investigation, destruction and mitigation, with respect to the crops, I take it your position would be there aren't any crops to do that to. Is that right? Precisely, Your Honor. But then they had a fourth prong, and that was imposing safeguards. Would you address that and give the Court your view on that? My view on that, Your Honor, is that in light of the recent comprehensive NEPA analysis that was completed with respect to sugar beets, which took into account not only the evidence from, gathered from the four sugar beet permits at issue here, but also APHIS's experience with sugar beets and their risks in other contexts, the agency determined, nevertheless, that there was, that the Roundup Ready sugar beet is not a plant pest that APHIS can regulate at all. And so it's hard to imagine, Your Honor, what sort of relief, without a vacatur of that deregulation decision, this Court could award. The other thing I'd like to mention, Your Honor, is that the ---- Well, let me ask you on the note that this could be a different suit which was to challenge that actual decision. Would that be feasible at this point in terms of a timeliness? Could that still be challenged? The challenge to the ---- The deregulation. What they're calling the segmentation claim. Yes. I think, and this Court's decision in Center for Environmental Law and Policy from last year is an example of that, as well as the Pitt River decision I cited earlier. The other thing I'd like to mention, Your Honor, is that plaintiffs have suggested that the issuance of the permits in this case was part of a three-phase process designed ultimately to lead to deregulation. And that's simply not the case. The record in this case shows that APHIS is reacting to the applications that are presented to it. An application was, four applications were presented to the agency in 2010 related to time-limited six-month permits for the stackling phase of the sugar beet life cycle. The agency looked at the evidence and determined that there was a negligible risk of genetic cross-pollination from those permits. And this Court, in its earlier decision in this case, noted that, in fact, there was a negligible risk of genetic cross-pollination. The agency was then presented with petitions for partial deregulation and ultimately full deregulation. And the agency, based on the evidence before it, made those independent determinations in different agency actions. Your Honor, this is an APA case. There is a well-defined record. There was a defined record before the district court. And the district court made a reasonable decision that this case is moot. Any further questions? All right. I'll yield the remainder of my time to Mr. Bress. Thank you. May it please the Court. Richard Bress for Intervenor Appellees and Cross-Appellants. The relief that plaintiffs believe that they can still obtain, as this Court noted in the government's argument, is largely relief that can't be obtained anymore with respect to destruction, et cetera, of the plants which were harvested, you know, a year ago or so. To the extent that they talk about imposing safeguards, they're really talking about trying to affect the latest agency order, which is two orders after the one that they challenged in this case. Because if they want to impose safeguards, for example, they'd have to demonstrate that the EIS somehow was improper or came to the wrong conclusions. Not only is that logically not part of this case, it's already been held not to be part of this case. After the partial deregulation order came out, plaintiffs attempted to amend their complaint in this case to add a challenge to the partial deregulation. The district court in this case rejected that request and said that the partial deregulation was a separate agency action that would have to be challenged in a new case if it were to be challenged at all, because it depends on an entirely different administrative record. The plaintiffs never appealed that decision of the Court to this Court, and so it's law of the case that any challenge to the partial deregulation was a separate case. I would submit that the full deregulation that happened after that is even more clearly so. They certainly can, as the government noted, if they wish, if the plaintiffs wish, challenge the full deregulation at this point, and they can make the very same claim that they've made here, that same NEPA claim, which I'll agree with the government on, is really a timing claim of the sort that's in CELP as opposed to what this Court normally would view as a segmentation claim. On that, I would agree with plaintiffs that it's not a close legal question, but I would disagree with in which direction. The CELP case made quite clear that until you reach the go, no-go point of commitment with an action, there's no need to prepare the EIS for the full project. Here, the agency, when it granted the four permits, retained absolute discretion with regard to what it would do later. There was no irretrievable commitment of either natural resources or the agency's resources. Once we get past the question of whether effective relief can be granted in this particular case, which I'll note is just about these permits, and you can look to the complaint for that, the question is capable of repetition and yet evading review. Contrary to plaintiffs' statement to this Court, the burden to establish the evasion repetition facts is actually on the plaintiffs. One of the cases that says that is Sample v. Johnson, which we cite in our brief at page 50, footnote 23. And as this Court noted in questioning, there really is no evidence that the plaintiffs have put forward in this record that would satisfy that burden. Indeed, even if the Court were to consider the materials that plaintiffs themselves submitted, it shows that evading review is not something that they would be able to prove here anyways, because some permits last more than two years. I've got nothing further on this part of it. I'm — if the Court has questions about the intervention, I'm happy to answer them, but if not, I'm also happy to cede time to the Court so we can move on. Any further questions? Okay.  Thank you. Roberts. The defendants keep sort of pushing the inquiry to other lawsuits in other fora, challenging other agency actions, none of which affects the question before this point. The issuance of an EA and an EIS is irrelevant to this question. It neither moots nor cures the defendants' violations. The agency can't deprive the Court of its jurisdiction, which is, of course, what we're arguing about, by self-serving determinations about the safety of the crop or by post hoc NEPA review. The Pitt River Tribe case, which has been mentioned, the Court said, allowing an agency to avoid NEPA review and then cry moot after belated issuance of analysis is not acceptable. The Court said, We have repeatedly held that dilatory or ex post facto environmental review cannot cure an initial failure to undertake environmental review. Moreover, if a procedural challenge to the EA or to the EIS in later litigation offers plaintiffs effective relief, that same relief is effective in the case below, demonstrating that this case is not moot. Moreover, the lawfulness of the planting permits without NEPA review is not presented in the later cases. In Alaska Center for the Environment, this Court looked at a case in which there was a one-year permit accompanied by a categorical exclusion, similar to this case, followed by a five-year permit accompanied by an EA. Again, similar to this case, the Court said, The question of whether the Forest Service can authorize a one-year permit under the categorical exclusion cannot be raised in challenging the five-year permit. That's very similar to this case, and in fact, the Court below recognized this very issue, cited this case, and then erroneously tried to distinguish it by saying that my clients had in fact had a full opportunity below to litigate their claims, which is patently wrong. This was a five-month period of time that we were given. We never did litigate it to judgment before it was dismissed as moot. The Court confused the standard for the duration factor of capable of repetition yet evading review and said that as long as my clients had the opportunity to get in court to seek preliminary injunctive relief, it didn't evade review. That's, of course, not the legal standard. The legal standard for evading review requires plenary review through the appellate stage and a minimum, according to the Supreme Court, of two years. So with respect to the burden on the defendants to prove it's not capable of repetition, rather than putting that burden on plaintiffs, I would cite Ackley v. Western Conference, Johnson v. Rancho Santiago. It's quite clear that the burden is on the defendants to prove that a matter is not capable of repetition. Thank you very much for your argument. Thank you. The case history will be submitted. And for the lawyers in the following case, if you're in the courtroom, and I expect you are, please stand by. We may reconvene as early as 10 minutes from now, depending on our schedule. Thank you.
judges: Schroeder, Thomas, McKeown